UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MINNIE KONG,
ON BEHALF OF HERSELF                                    Case No. 1:17-cv-3514 (RJS)
AND ALL OTHERS SIMILARLY SITUATED,

                              Plaintiff,

      -against-

LINDA STRUMPF AND
U.S. EQUITIES CORP.,

                          Defendants.
---------------------------------------------------------------X


### REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF
### <u>DEFENDANTS' MOTION TO DISMISS</u>


**KAUFMAN DOLOWICH & VOLUCK, LLP**
*Attorneys for Defendants*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone:  (516) 681-1100
Facsimile:  (516) 681-1101


On the brief:
   Brett A. Scher, Esq.
   Adam M. Marshall, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT...................................................................................................................... 2

POINT I
THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS................................. 4

    A.    There Was No Independent FDCPA Violation
            For Statute of Limitations Purposes.......................................................... 2

    B.    Kong Has a Complete Cause of Action
            Over a Year Before Filing this Action................................................... 3

    C.    Kong Has Failed to Distinguish the Scott Case...................................... 5

POINT II
THE AMENDED COMPLAINT FAILS TO STATE A VIABLE FDCPA CLAIM ................... 8

    A.    Kong's FDCPA Claim is Predicated Upon
            Alleged Noncompliance with CPLR § 308 ........................................... 7

    B.    Kong Relies Upon Inapposite Case Law ............................................... 7

    B.    The FDCPA Does Not Impose Strict Liability
            For Violations of State Law...................................................................... 9

CONCLUSION.................................................................................................................. 10

Defendants Linda Strumpf ("Strumpf") and U.S. Equities Corp. ("U.S. Equities") (collectively, the "Defendants"), by their attorneys Kaufman Dolowich & Voluck, LLP, respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint of plaintiff Minnie Kong ("Plaintiff" or "Kong") pursuant to Rule 12(b)(6) or, alternatively, pursuant to Rule 56, of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

Instead of addressing each of Defendants' arguments for dismissal head on, especially as to the statute of limitations issue, or even trying to distinguish the case law cited in Defendants' moving brief, Kong has done little more than offer up a series of block quotes without any analysis or context.  With respect to the untimeliness of her FDCPA claim, Kong has done nothing at all to distinguish this action from the numerous cases in which Second Circuit courts have held that a plaintiff "cannot revive the statute of limitations period by complaining about a later act in furtherance of [a] time-barred act . . . [where] there was no separate violation of the FDCPA." Scott v. E. Hope Greenberg, 2017 U.S. Dist. LEXIS 50822, at *12 (E.D.N.Y. Mar. 31, 2017) (quoting Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009); see also Sierra v. Forster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999); Calka v. Kucker, Kraus & Bruh, LLP, 1998 U.S. Dist. LEXIS 11868, at *9 (S.D.N.Y. Aug. 3, 1999).  The fact that Kong continues to self-servingly describe the issuance of the May 13, 2016 Income Execution as a separate FDCPA violation *does not make it so*.

Kong has fallen equally short when it comes to explaining how the issuance of the Income Execution, by itself, is a colorable FDCPA violation.  The gist of Kong's argument on the issue is that, because the Judgment in the underlying Collection Action was allegedly "void" for lack of personal jurisdiction when it was entered in 2004, *any attempt* by Defendants to

---

[1] Defendants incorporate by reference the capitalized defined terms used in their moving brief.

enforce that Judgment, no matter when, *automatically* constituted an action that could not legally be taken (in violation of 15 U.S.C. § 1692e(5)) or an "unfair or unconscionable means" to collect or attempt to collect a debt (in violation of 15 U.S.C. § 1692f).  (Pltf. Memo at 3-4).  That has never been the law.

To be sure, while federal courts in this Circuit and elsewhere have held that allegations of "sewer service" can give rise to a viable FDCPA claim, no court has gone so far as to hold that an innocent defect in service of process can trigger a *per se* violation of the FDCPA, and courts that have been asked to take that leap have refused to do so.  The outcome in this case should be the same.

## ARGUMENT

## POINT I

### THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS

Beyond the block quotes, Kong's response to Defendants' arguments for dismissal on statute of limitations grounds consists of three (3) arguments:

- "The Amended Complaint is not barred by the FDCPA's statute of limitations since the alleged violation is issuing an Income Execution within one year prior to the start of this action to enforce a void Judgment rather than an act that occurred in the process of obtaining the void Judgment."

- "In the case at bar, the injuries alleged in paragraph 28 of the Amended Complaint did not occur until the issuance of the Income Execution."

- "The case at bar and *McCrobie* supra are in contrast with *Scott v. Greenberg* 15-CV-05527 (MKB) (E.D.N.Y., 2017)."

(Pltf. Memo at 8-9).  We will address each of these assertions in turn.

**A.      There Was No Independent FDCPA Violation for Statute of Limitations Purposes**

First, it makes no difference whether the Income Execution was issued less than a year before this action was commenced.  (See Pltf. Memo at 8).  What matters is whether the issuance

2

of the Income Execution constituted a new and independent FDCPA violation when compared with any putative FDCPA violations that occurred beyond the one-year limitations period.  See Sierra, 48 F. Supp. 2d at 395; Scott, 2017 U.S. Dist. LEXIS 50822, at *12; Calka, 1998 U.S. Dist. LEXIS 11868, at *9.  Here, despite Kong's unsupported suggestion to the contrary, there is no meaningful distinction to be drawn between Defendants' actions in *applying for* and *obtaining* the subject Judgment in 2004, and their later attempt to *enforce* that same Judgment in 2016.  Both phases depended upon the same (allegedly inaccurate) representations of proper service in the Collection Action and both phases were affected by the same (alleged) jurisdictional infirmity flowing from defective service.

More importantly, Kong has failed to identify any distinction *at all* – meaningful or otherwise – between Defendants' issuance of the Income Execution in May 2016 (within the limitations period) and Defendants' issuance of an Information Subpoena to the same employer in March 2016 (beyond the limitations period).  It is *undisputed* that Kong both received *and responded to* that earlier Information Subpoena, through counsel, over a year before the filing of this action.  (See Defs. 56.1 at ¶¶ 7-14).[2]  It seems Kong's strategy for dealing with that inconvenient fact is to ignore it in her brief.

**B.**     **Kong Had a Complete Cause of Action Over a Year Before Filing this Action**

Second, Kong cannot postpone the accrual date of her FDCPA claim by feigning some unique injury caused by the Income Execution.  (See Pltf. Memo at 9) (citing Benzemann v.

---

[2] Kong did not bother to submit a counterstatement of material facts as part of her opposition to this motion, as required by Local Civil Rule 56.1(b).  Accordingly, the facts alleged in Defendants' 56.1 Statement are now admitted.  See Bolton v. City of New York, 2015 U.S. Dist. LEXIS 33700, at *9-10 (S.D.N.Y. Mar. 18, 2015) ("[A] nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.  Typically, assuming the other requirements of Rule 56 are met, the nonmoving party's failure to [f]ile a responsive56.1 statement results in a grant of summary judgment.") (citations and internal quotation marks omitted).

Citibank, N.A., 806 F.3d 98, 101 (2d Cir. 2016)).   As a threshold matter, the Amended Complaint fails to plead any such concrete injury.   Kong never alleges, for example, that her wages were *actually* garnished as a result of the Income Execution; she merely asserts that the Income Execution "subject[ed] her to having her wages garnished."   (Am. Compl. at ¶ 28). Likewise, the "time and money" Kong purports to have expended "to stop the garnishment of her wages" is indistinguishable from that which was or would have been expended in seeking vacatur of the underlying Judgment.   (See Am. Compl., Exhibit "C").   It is telling that, when Kong filed her Motion to Vacate the Judgment in July of 2016, she did not seek any separate relief unique to the Income Execution.

Furthermore, even if Kong had pled an actual injury resulting from the Income Execution, the case she cites (and quotes from) would not support a separate accrual date for statute of limitations purposes.   In Benzemann v. Citibank, supra, the Second Circuit simply held that an FDCPA violation predicated upon a bank restraint issued to the *wrong person's* bank "occurs" on the date the bank freezes the account, rather than the date on which the restraint is first issued to the bank by the debt collector. 806 F.3d at 103.   At most, Benzemann stands for the unremarkable proposition that an FDCPA claim cannot accrue until the plaintiff has sustained *some* injury due to the defendant's actions.

Benzemann has no application in a situation like this, where Kong is the debtor against whom the subject Judgment was entered (as opposed to an unrelated party with a similar name), and where the Defendants' actions within the limitations period were substantively identical to those outside the limitations period.   Again, even if this Court were to draw a line between obtaining the Judgment and enforcing it, Kong still would have had a "complete and present cause of action" against Defendants in April 2016, more than a year before this action was filed,

when Kong learned that Defendants had issued an Information Subpoena to her employer while seeking to enforce a purportedly "void" Judgment.   See Wai Hoe Liew v. Cohen & Slamowitz, LLP, 265 F. Supp. 3d 260, 281 (E.D.N.Y. 2017) ("Unlike the plaintiff in Benzemann, Mr. Liew has alleged a multitude of actionable injuries prior to learning on April 3, 2014 that his Citibank accounts had been restrained.").   This fact is only bolstered by Kong's admission that she retained counsel to represent her before April 18, 2016 (more than a year before the filing of this action) with respect to her efforts to dispute the Judgment. (See Defs. 56.1 at ¶¶10-13).   Thus, even if the post-judgment enforcement effort process could be deemed an independent violation, Plaintiff concedes she had counsel who could have/should have commenced her claim within the statute but failed to do so.   Her FDCPA claim is therefore untimely.

**C.**     **Kong Has Failed to Distinguish the Scott Case**

Third, Kong's claim that this case *and* McCrobie v. Palisades Acquisition XVI, LLC, 664 Fed. Appx. 81 (2d Cir. 2016) "are in contrast with" Scott v. E. Hope Greenberg is wrong on two levels.  (See Pltf. Memo at 9).  To begin with, this case is nothing like McCrobie for the many reasons detailed in Defendants' moving brief.  (See Defs. Memo at 8-10).  Kong has not put forth any specific rebuttal on that subject, once again opting for silence over actual opposition.

Further, this case is on all fours with Scott.   In her brief, Kong has presented the following quote, without context, in order to imply that the plaintiff in Scott never pursued the theory of FDCPA liability advanced by Kong in this action:

> As pled, Plaintiff does not allege that the income execution, in and of itself, or Greenberg's utilization of judgment collection remedies violates the FDCPA. ... Rather, the only alleged FDCPA violation as to the income execution – the misrepresentation by Russel – occurred outside the limitation and, accordingly, Plaintiff's claim is not timely.

(Pltf. Memo at 9) (quoting Scott, 2017 U.S. Dist. LEXIS 50822, at *14).  In point of fact, as discussed in Defendants' moving papers (Defs. Memo at 6-7), the plaintiff in Scott did *attempt* to plead that the challenged income execution amounted to a separate violation of the FDCPA. Scott, at *11.  Judge Brodie determined that the factual allegations did not support such a conclusion because, according to the plaintiff, the thing that made the income execution improper (fraud in the procurement of the judgment) occurred outside the FDCPA's one-year limitations period.  That is what the Scott Court meant when it stated that "[a]s pled," the plaintiff had not alleged that the income execution itself violated the FDCPA.  The Scott Court was saying that the plaintiff had *tried* to plead a separate violation and *failed*.

Again, Kong's Amended Complaint suffers from the same flaw as the pleading in Scott. As was the case in Scott, Kong is attempting to take an alleged FDCPA violation relating to the procurement of the Judgment *years ago* and bootstrap that supposed violation to an act that occurred within the limitations period.  An act that does not support an independent violation of the FDCPA.  That the plaintiff in Scott chiefly relied upon a fraud theory rather than a purported lack of jurisdiction for the underlying judgment is of no moment.[3]  The takeaway from the Scott case is that a plaintiff cannot rely on post-judgment collection efforts to manufacture new accrual dates for a stale FDCPA claim.  In sum, just as successive filings during the course of a collection action do not restart the statute of limitations, the use of post-judgment collection efforts do not serve to "carr[y] through" the time-barred violation to the most recent information subpoena or income execution.  Scott, at *15.

---

[3] It should be noted that the plaintiff in Scott also alleged improper service of the summons and complaint in the underlying collection action and apparently obtained dismissal of the complaint on that ground.  Scott, at *8.

## POINT II

## THE AMENDED COMPLAINT FAILS TO STATE A VIABLE FDCPA CLAIM

Despite Kong's attempt to obscure the issue, it remains all too clear that she is seeking to do something that no court has allowed before, and something which Gallego v. Northland Group, Inc., 814 F.3d 123 (2d Cir. 2016) flatly prohibits: transform innocent noncompliance with state law service of process rules into a *per se* FDCPA violation.

### A.   Kong's FDCPA Claim is Predicated Upon Alleged Noncompliance with CPLR § 308

Kong asserts in opposition that her claim is not barred by Gallego because the Amended Complaint "does not allege that Defendants violated the FDCPA by failing to serve Plaintiff in compliance with NY CPLR 308" or that "Defendants improperly procured the Judgment by failing to comply with NY CPLR 308," but rather that Defendants violated the FDCPA by attempting to enforce a "void" judgment. (Pltf. Memo at 5). This is circular reasoning at best. According to Kong's own pleading, the *only reason* the Judgment against Kong was supposedly "void" is because of an alleged defect in service of process "under New York State Law." (Am. Compl. at ¶ 24). And the *only reason* Defendants' issuance of the Income Execution is alleged to have been improper under the FDCPA is because the underlying Judgment was supposedly "void" due to defective service. (Id. at ¶¶ 25-26). Thus, Kong is quite literally claiming an FDCPA violation based on Defendants' alleged noncompliance with CPLR §308 at the outset of the Collection Action in 2004.

### B.   Kong Relies on Inapposite Case Law

Second, Kong's effort to analogize this action to cases in which noncompliance with state law has been held to violate the FDCPA fails for several reasons. (See Pltf. Memo at 6). Chief among them is that, by Kong's own admission, each of the cited cases involved conduct that was

ostensibly "false, deceptive, or misleading" within the meaning of the FDCPA.   In Musah v. Houslanger & Assocs., PLLC, 962 F. Supp. 2d 636 (S.D.N.Y. 2013) and Moukengeschaie v. Eltman, Eltman & Cooper, P.C., 2016 U.S. Dist. LEXIS 43725 (E.D.N.Y. Mar. 31, 2016), for example, the plaintiffs alleged that they were never given notice that the ownership of their debts had changed hands before the defendants attempted to collect.   In Madden v. Midland Funding, LLC, 237 F. Supp. 3d 130 (S.D.N.Y. 2017), the plaintiff alleged that the defendant debt collector had sought to collect a usurious rate of interest.   Moreover, in every cited case, it was at least plausible for the debt collector to detect – and avoid – the allegedly wrongful conduct.

By contrast, Defendants' alleged conduct in this case cannot possibly be construed as false, deceptive or misleading.   Under the undisputed facts, Defendants relied upon a process server's affidavit of service which was valid on its face, as was Defendants' right under New York law.   See Scarano v. Scarano, 63 A.D.3d 716, 880 N.Y.S.2d 682, 683 (2d Dep't 2009) ("A process server's affidavit of service constitutes prima facie evidence of proper service.").   As previously discussed, this is not a situation where the plaintiff has made allegations of intentional sewer service by the process server.   Nor is it one where the defendants are alleged to have sought enforcement of a judgment *after* it had been vacated by a separate court order.   See e.g., Okyere v. Palisades Collection, LLC, 961 F. Supp. 522, 530 (S.D.N.Y. 2013).[4]   Rather, as Kong concedes, the first time Defendants were even placed on notice that the Judgment *might* be subject to vacatur for lack of personal jurisdiction was when Kong filed her Motion to Vacate in July 2016.

---

[4] Kong also cites Okyere in her opposition brief as demonstrating "unfair or unconscionable" conduct within the meaning of 15 U.S.C. §1692f .   (See Pltf. Memo at 4).   Again, there is no allegation in this case that Defendants continued their enforcement efforts after Kong filed her Motion to Vacate.

Federal courts have uniformly dismissed FDCPA claims predicated on comparable allegations. See e.g., Dillon v. Riffel-Kuhlmann, 574 F. Supp. 2d 1221, 1223 (D. Kans. 2008); Thurow v. Prof'l Fin. Co., 2017 U.S. Dist. LEXIS 103774, at *12 (D. Col. July 5, 2017); Briscoe v. Cohen, McNeile & Pappas, P.C., 2014 U.S. Dist. LEXIS 139786, at *20 (D. Kans. Oct. 1, 2014); Pierce v. Steven J. Russo, P.A., 2001 U.S. Dist. LEXIS 22024, at *5-6 (D. Minn. Dec. 21, 2001) ("[W]hile defendants' attempt at legal service failed, this failure alone does not state a claim for a cause of action under the FDCPA.").

## C.   The FDCPA Does Not Impose Strict Liability for Violations of State Law

Kong has tried to sidestep the case law cited by Defendants by declaring that the FDCPA is a "strict liability" statute which largely disregards a debt collector's intent. (See Pltf. Memo at 6). As such, Kong reasons, it makes no difference whether the alleged defect in service was the result of intentional or unintentional conduct on the part of Defendants.

The flaw in this argument is easy to detect. In short, the FDCPA only imposes strict liability for violations *of the FDCPA* itself. It does not impose strict liability for violations of state law. That was the crux of the Second Circuit's ruling in Gallego, supra. Here, as discussed above and in Defendants' moving brief, Kong has not and cannot allege sufficient facts to bridge the gap between an alleged violation of state procedural law and a substantive violation of the FDCPA. At most, the alleged defect in service gave rise to a *state law* remedy (the Motion to Vacate the Judgment pursuant to CPLR 5015(a)(4)), which Kong leveraged into a favorable settlement for a debt she *admittedly owed*. (See Defs. 56.1 at ¶¶ 2, 21-22).

## CONCLUSION

For all the foregoing reasons, as well as those set forth in their moving papers, Defendants respectfully request that this Court grant their motion to dismiss the Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56.

Dated: Woodbury, New York
       February 7, 2018

                            KAUFMAN DOLOWICH & VOLUCK, LLP


By:     _____
        Brett A. Scher, Esq.
        Adam M. Marshall, Esq.
        *Attorneys for Defendants*
        135 Crossway Park Drive, Suite 201
        Woodbury, New York 11797
        (516) 681-1100


4815-7086-9084, v. 1

10